## CHAMPLIN REFINING CO. v. DONNELL.
### No. 22979. Sept. 17, 1935.

Harry O. Glasser, E. S. Champlin, and Charles Swindall, for plaintiff in error.

Twyford & Smith, for defendant in error.

RILEY, J. This is an appeal from a judgment for damages based upon a verdict of a jury in a proceeding to condemn, under the eminent domain statute, an easement for an oil or oil and gas pipe line across the land of defendant in error.

The proceedings were commenced by plaintiff in error, designated as plaintiff below. Commissioners were appointed, who viewed the premises and made an award. Defendant in error, designated in the trial court as defendant, being dissatisfied with the award of the commissioners, filed her written demand for "a jury trial on the amount of her damages and compensation," and praying that she be awarded the sum of $50,000. The land consists of 80 acres, being the S. ½ of the S. E. ¼ of the S. E. ¼ of section 1, township 12 N., range 3 W.

The pipe line was located and constructed across the land, running slightly west of north across the west 40 acres. It enters the premises on the south line 796 feet east of the S. W. corner of the west 40 acres, and emerges on the north line, 608 feet east of the N. W. corner.

The matter was tried to a jury resulting in a verdict assessing defendant's damages at $4,000. Judgment was entered accordingly, and plaintiff appeals.

No objection was made to the instruction of the court, and no question is raised here as to the correctness thereof.

In its motion for new trial, plaintiff set up as alleged error: (1) Refusal by the court of the request of plaintiff that the jury be permitted to view the premises. (2) Excessive damages awarded by the jury appearing to have been given under the influence of passion and prejudice. (3) That the verdict is not supported by sufficient evidence and is contrary to law. (4) Error of law occurring at the trial and excepted to by the plaintiff. (5) Error of law in refusing to permit plaintiff to make proof of the assessed value of the land. (6) Error in refusing to permit the witness Frank Johnson to testify as to the amount of damages paid to him for right of way over his land.

The petition in error sets up substantially the same alleged errors.

It is first asserted that the court erred in refusing to permit the introduction in evidence of the award and report of the commissioners appointed by the court.

All that is said in the briefs of plaintiff in error is that this ruling of the court was manifestly erroneous and highly prejudicial to the rights of "defendant." (Evidently the rights of plaintiff were intended.)

No authority is cited in either the original or supplemental brief of plaintiff in error in support of this contention.

The exact question has twice been before this court.

In Wichita Falls & N. W. Ry. Co. v. Munsell, 38 Okla. 253, 132 P. 906, it was held:

"On appeal from the board of appraisers to the district court in a condemnation proceeding, an award made by the board of appraisers is not competent evidence to go to the jury for the purpose of establishing the amount of damage to a farm resulting from the construction of the railroad across it."

In St. Louis, El Reno & Western Ry. Co. v. Oliver et al., 17 Okla. 589, 87 P. 423, it was held:

"In a condemnation proceeding, where the landowner appeals from the award and the case is tried to a jury in the district court, it is not proper to permit the jury to be informed of the amount of the award made by the commissioners."

That question seems to be settled adversely to the contention of plaintiff in error.

It is next contended that the court erred in refusing the request of plaintiff that the jury be permitted to view the premises.

No authority is cited in the briefs of plaintiff in error in support of this contention.

Defendant in error cites section 361, O. S 1931, which provides:

"Whenever, in the opinon of the court, it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred. it may order them to be conducted, in a body, under the charge of an officer, to the place which shall be shown to them by some person appointed by the court for that purpose."

Defendant in error also cites Spurrier Lbr. Co. v. Dodson, 30 Okla. 412, 120 P. 934, which holds:

"Section 5796, Comp. Laws 1909, authorizing a view by the trial jury of the property, the subject of the action, or the place where a material fact occurred, is discretionary with the trial court, and its ruling thereon will not be reversed on appeal in the absence of a showing of an abuse of discretion."

This is not a condemnation case, but the rule seems to be the same in such cases in the absence of a statute making it the duty of the jury to view the premises. 20 C. J. 1012; Kan. Cent. Ry. Co. v. Allen, 22 Kan. 285; Coughlen v. Chicago, I. & K. Ry. Co. (Kan.) 13 P. 813.

This question also seems to be settled contrary to the contention of plaintiff in error.

It is next contended that the court erred in refusing plaintiff's offer to prove the assessed valuation of the land.

No Oklahoma decision on this question in a condemnation case is cited by either party. But in Bartlesville Interurban Ry. Co. v. Quaid 51 Okla. 166, 151 P. 891, it is held:

"Assessor's lists are not admissible, as admissions against interest as to value of property listed for assessment, where the issue as to value is raised in a civil action between the owner and parties other than the state." Winemiller v. Lorton, 121 Okla. 99, 249 P. 406.

Plaintiff cites Patch v. City of Boston, 146 Mass. 52, 14 N. E. 770, as authority supporting its contention, and says that the court there held:

"Where an owner said to an assessor that the appraised value was more than the property is worth is admissible in eminent domain proceedings a year later as an admission against himself."

We do not find the statement as quoted in the case, but if it be there, it goes to a statement of the owner himself against interest. Such is not the offer here. The offer here is to prove the assessed value, presumably made by the assessor.

Beckwith v. Talbot, 2 Colo. 639, is cited. It was there held, upon a question of the number and value of cattle in a herd, a tax schedule made by defendant's agent at his request, showing those facts, is competent against him. There the statement or schedule was prepared, not by the assessor, but by the agent of the party sought to be charged. This does not hold that a schedule value made by the assessor would be admissible.

Manning v. City of Lowell, 173 Mass. 100, 53 N. E. 160, is cited, and it was there said:

"On an issue of the value of lands taken under the right of eminent domain, a pencil memorandum of their value prepared by the owner two years before their taking, and given by him to the assessor to obtain an abatement of taxes thereon, is admissible as an admission by him."

Again this is a statement made by the owner himself and not by the assessor. It was an admission against interest and admissible like any other admission of a party against his own interest.

United States v. First Nat. Bk., 250 Fed. 229, is cited. It was there held that the "value at which the owner has assessed the lands for taxation is admissible as a part

of the evidence in the case tending to contradict the testimony of the owner who may have placed a greater valuation on the same lands in his testimony." It will be observed that in that case it was the value at which the owner assessed the lands. The inference is that under the laws of the state of Alabama, where that case arose, the owner placed the value on the land. It was his own valuation that was admissible against him.

Vernon Shell Road Co. v. City of Savannah, 95 Ga. 387, 22 S. E. 625, is cited by plaintiff. There also it was the value of stock returned for taxation that was held to be admissible against the owner, not the valuation made by the assessing officer.

It is contended that the trial court erred in excluding the testimony of Frank P. Johnson as to the value of the land or damage to the land in question.

The record shows the question propounded, the objection, and ruling of the court are as fo'lows:

"Q. I will ask you to state if you are able to do so, Mr. Johnson, what—in your opinion—would be a reasonable damage for the construction of the pipe line across the Donnell land? Mr. Twyford: Object to that as being incompetent, irrelevant, and immaterial and calling for—(interrupted). The Court: Sustained. Mr. Glasser: Is it necessary if the court please, to note an exception? I would like to have an exception, now, to the ruling just made and to the one just previously made."

It is insisted that Mr. Johnson, being the owner of the 160 acres of land in the same section, and using it for the same purpose which defendant had bought her land, viz., "a country home site," made him competent to testify as to the reasonable damages for the construction of the pipe line across defendant's land. The difficulty is that counsel never did qualify the witness as to his know'edge of the value of lands in that vicinity, at or near the time of the taking, but assuming that he was qualified, the form of the question propounded is objectionable. The ultimate question for the jury to determine in this class of cases is the value of the land actually taken, and if less than the whole tract is taken, how much that portion not taken is diminished in market value in consequence of the taking. These values are to be determined with reference to what the land is worth for sale in view of the uses to which it might have been applied.

The evidence then should be as to the reasonable market value of the lands immediately before the taking and immediately thereafter.

It is for the jury to determine from such evidence the amount of damage. There was no error in sustaining the objection to the question in the form it was put to the witness.

Finally, it is contended that the damages awarded are excessive, appearing to have been given under the influence of prejudice.

The amount of the award, $4,000, for a pipe-line right of way, one-fourth mile long across the 80 acres of land, is the only thing that would appear to indicate prejudice. There is nothing showing to have occurred at or during the trial which could be said to be likely to create or arouse prejudice against the plaintiff.

The land in question is located some two or three miles north and east of Oklahoma City. It is on an improved highway running east and west, running along the south side thereof. The land is rather rough and covered for the most part with a growth of natural oak trees. The chief value of the land is its location and suitability for country home purposes. It is described as rather high and commanding a view of Oklahoma City, the Capitol, Northeast Lake, and a number of high-class country homes in the vicinity.

At the time of the trial the pipe line had been constructed. It is an 8 inch welded line, buried some 20 inches or more below the surface.

In constructing the line the company had gone upon the premises and cleared away a strip of timber some 30 feet wide. Some of the trees cut down were said to be about eight inches in diameter. Most of them were from two to four inches. Defendant testified that she acquired and was holding the land.

Mrs. Donnell, the defendant, was a witness in her own behalf. She qualified as a witness as to knowledge of the value of lands in that vicinity, and testified that in her opinion the 80 acres, before the cutting of the timber and construction of the pipe line, were worth $1,500 per acre, and after the cutting of the timber and construction of the pipe line it was worth not to exceed $400 per acre, a decrease in value of $1,100 per acre, or a total decrease $88,000.

One witness, Mr. J. H. Leavitt, a real estate man, testified that in his opinion the land, the west 40 acres, before the pipe line

was placed on it, was worth approximately $1,000 per acre. This witness would not venture an opinion as to the value after the construction of the pipe line.

He testified that in his opinion there was no change in value as to the east 40 acres.

Another witness, H. F. Bradburn, a real estate broker, testified that in his opinion the reasonable market value of the west 40 acres before the pipe line was constructed was "a thousand or eleven hundred dollars an acre". And after the construction of the line, $300 to $400 an acre. The value of the east 40 before the taking, $1,000, and after $500 per acre.

The testimony of plaintiff's witnesses was to the effect that the difference in value of the land before and after the appropriation was from nothing up to not to exceed $500. Two of plaintiff's witnesses testified that in their opinion there was no appreciable difference in the market value of the land caused by the construction and maintenance of the pipe line.

It appears, then, that the jury had some evidence before it of damages from nothing up to $88,000.

It would be a credulous juror indeed who would believe the exaggerated estimate of the amount of her damage made by the owner or her principal witness. Defendant placed the difference in value of the land before and after the construction of the pipe line at $88,000. Her principal witness, Mr. Bradburn, placed it at about $40,000.

On the other hand, no intelligent jury would believe the testimony of plaintiff to the effect that there was no appreciable change in value of the land, or that no damage whatever was caused by the appropriation of the land.

Somewhere between these extremes lies the truth. It was for the jurors to determine from the evidence.

The award might appear to be high, but the question presented for our consideration is not what our own conclusions from the evidence would be, but whether the conclusions reached by the jury, as expressed in the verdict, should stand. It has been said that:

"An appellate court should hesitate before setting aside the verdict of a jury in a condemnation case, and it will only make such order when it clearly appears that the verdict is unjust and unsupported by any competent evidence. * * * On a pure question of fact such as here presented * * * their verdict should not be disturbed except

for the want of competent evidence to support it." City of Seattle v. Littell et al. (Wash.) 104 P. 133.

Such in effect is the rule in Oklahoma. In Wichita Falls & N. W. Ry. Co. v. McAlary, 44 Okla. 326, 144 P. 583, it was held:

"In an action for damages sustained by a railroad right of way across one's premises, where four or five witnesses living in the vicinity of and well acquainted with the land have testified to the value of the land both before and after the railroad was built, and thereby fix the amount of damages sustained by the owner of the land, and the verdict of the jury is for an amount far less than the amount fixed by the witnesses, such verdict will not be disturbed because of lack of sufficient evidence to sustain same, and, in the absence of some showing to the contrary, it will not be disturbed on the ground that the jury was influenced by bias and prejudice, and that the verdict was excessive."

The rule in this class of cases is the same as in other cases where questions of fact are involved.

This court will not substitute its judgment for that of the jury in the matter of damages to be awarded for the condemnation of property for public use. To do so would be to destroy the jury system and right of trial by jury guaranteed by the Constitution.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.