2004 OK CIV APP 48

## STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff/Appellant,

v.

## CHELSEA BUTANE COMPANY, an Oklahoma Corporation; and the Mayes County Treasurer, Defendants/Appellees.

### No. 99,144.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 16, 2004.

Certiorari Denied May 17, 2004.

---

Barry K. Roberts, Norman, OK, for Plaintiff/Appellant.

K. Ellis Ritchie, Pryor, OK, for Defendants/Appellees.

Opinion by KEITH RAPP, Judge.

¶ 1 The trial court plaintiff, State of Oklahoma ex rel. Department of Transportation (ODOT), appeals the trial court decision awarding attorney fees and costs to the trial court defendant, Chelsea Butane Company (Chelsea), for the "in fee" condemnation portion of this action after a trial court determination that ODOT had abandoned this action.

## BACKGROUND

¶ 2 In January 1996, ODOT filed a condemnation petition against Chelsea seeking to condemn a ten-foot wide fee simple interest in Chelsea's property for use in connection with road construction. Commissioners were appointed and rendered their report in March 1996, determining a fair compensation to be $4,000.00, which ODOT paid into court

in April 1996.[1] ODOT took possession of the tract to build its road project. Chelsea demanded a jury, but did not withdraw the payment.

¶ 3 ODOT filed an amended petition in September 1997, to change the nature of the taking from that of a fee to an easement, but still including the entire property originally described. At that time, ODOT did not ask for a new Commissioners' report. Chelsea requested an amended Commissioners' report by motion filed December 28, 1998. On June 15, 2001, ODOT requested an amended Commissioners' report.[2] A new report was issued in September 2001, reflecting fair compensation for the easement and work area to be $93,300.00. ODOT, having previously paid the $4,000.00 into court, paid the balance into court, and demanded a jury trial on its exception to the new report. Chelsea then withdrew the entire sum without objection.

¶ 4 On December 28, 2001, Chelsea moved for its attorney fees and costs incurred on the ground that it had incurred these costs in reliance upon, and in defense of, the original fee taking and the original Commissioners' report. Chelsea argued that ODOT had abandoned the original proceedings by amending its petition, having a new Commissioners' report, and payment of the compensation into court. The trial court, after a hearing, assessed fees and costs totaling $24,464.85, by order of August 9, 2002. ODOT then sought, without success, extraordinary relief from the Supreme Court. The Supreme Court denied ODOT's application to assume original jurisdiction on October 29, 2002.

¶ 5 On March 25, 2003, Chelsea filed a motion to clarify the attorney fee order and to reconsider the order permitting an amendment to the Commissioners' report. The trial court, on May 8, 2003, issued a lengthy ruling holding that ODOT had abandoned its previous condemnation of the fee simple and confirmed the attorney fee award for the fee portion of the action. The trial court reasoned that when ODOT completed the change from an "in fee" taking to an easement taking, ODOT had abandoned the original taking. The trial court held the abandonment was completed upon ODOT's payment of the money recommended by the Commissioners on their easement report. The trial court found that the date of completion of the change corresponded to the date, November 21, 2001, that ODOT deposited the money pursuant to the new Commissioners' report and that ODOT had taken possession previously under the original proceedings. Fees were awarded under 27 O.S.2001, § 11(2).[3] ODOT appeals.

¶ 6 ODOT here challenges only the authority of the trial court to consider and award fees under the facts of the case in two contexts:

First, ODOT argues that it had not abandoned the "in fee" eminent domain proceeding.

Second, ODOT argues that the trial court has effectively awarded an interim fee when there is no law permitting such an award.

¶ 7 Some of the facts presented by the parties are disputed, such as whether ODOT

1. Statements in the proceedings indicate that both sides believed that this Commissioners' report erred because of faulty instructions.

2. At the hearing on this request, ODOT's counsel discussed the case history and advised that the road construction was then complete.

3. 27 O.S.2001, § 11 provides:

Where a condemnation proceeding is instituted by any person, agency or other entity to acquire real property for use as provided in Section 9 of this title and
1. The final judgment is that the real property cannot be acquired by condemnation;
2. The proceeding is abandoned; or

3. If the award of the jury exceeds the award of the court-appointed commissioners by at least ten percent (10%), the owner of any right, title or interest in such real property may be paid such sum as in the opinion of the court will reimburse such owner for his reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings. Such determination by the court shall be appealable to the Supreme Court in the same manner as any other final order. The final award of such sums will be paid by the person, agency or other entity which sought to condemn the property.
The parties agree that only subsection 2 is involved here.

had conceded Chelsea's right to fees and costs at one point. During the hearing on the ODOT motion for a new Commissioners' report, ODOT's counsel appears to have conceded its responsibility for fees and costs incurred in reliance on the prior report. However, ODOT's Reply Brief here argues that ODOT's concession was for the award of interim fees and that ODOT intended to wait until the conclusion of the matter because of its position that no abandonment has taken place.[4]

### STANDARD OF REVIEW

¶ 8 The issue here is whether the undisputed facts and facts of record support the legal conclusion that ODOT has abandoned the condemnation proceeding. ODOT concedes that the statute authorizes fees and costs in such cases. Moreover, whether a party has a right to recover attorney fees presents a question of law. *Hawzipta v. Ind. School Dist. No. I–004 of Noble Co.*, 2000 OK CIV APP 113, ¶ 26, 13 P.3d 98, 103. Therefore, the trial court's decision is reviewed as a decision of law. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1.

### ANALYSIS AND REVIEW

¶ 9 The issue before this Court, as both parties acknowledge, is whether ODOT has abandoned the original proceeding by virtue of its amended petition that changed the nature of the taking from that of an "in fee" taking to an easement, together with obtaining the new Commissioners' report in the easement proceeding. No basis, other than abandonment, has been presented as authority for the attorney fee award.

¶ 10 The abandonment, if it occurred, triggers Chelsea's right to the fees and costs.[5] 27 O.S.2001, § 11(2). The trial court decides whether an abandonment has occurred. *City of Ardmore v. Donham*, 1958 OK 171, ¶ 9, 328 P.2d 438, 440. A mere dismissal is not equivalent to an abandonment. *Id.* The facts on which the trial court relied to find abandonment do not involve an unequivocal relinquishment or discontinuance of the eminent domain proceedings by ODOT. ODOT at all times exercised dominion, control and possession of the subject property.

¶ 11 For example, abandonment clearly existed when the condemnor decided not to go forward with the project and dismissed the case in *Atherton v. State Conservation Commission*, 203 N.W.2d 620 (Iowa 1973). In *Department of Transportation v. Northern Trust Co.*, 59 Ill.App.3d 1053, 17 Ill.Dec. 287, 376 N.E.2d 286 (1978), the department filed a complaint seeking to condemn 312.5 square feet of landowner's property. After negotiations, the public improvement was redesigned and the complaint was amended to take only 50 square feet of property which would not substantially interfere with the landowner's use of the residue. The court held that the Department was responsible for the landowner's attorney fees and costs under the Illinois reimbursement statute because the taking of less than 1/6th of the area originally sought resulted in little or no damages to the remainder and was tantamount to filing a new action and abandoning the old. The case of *Department of Public Works & Bldgs. v. Lanter*, 15 Ill.2d 33, 153 N.E.2d 552 (1958), involved the filing of an amended petition to condemn different property and rights, which the Court held constituted an abandonment. In *City of Hammond v. Marina Entertainment Complex, Inc.*, 681

---

4. Omitted from ODOT's concession is consideration of whether ODOT would still deem itself responsible if the new award by a jury did not exceed the new Commissioners' report sufficiently so as to authorize fees for Chelsea.

5. Chelsea makes no claim that fees are available here as a sanction nor does Chelsea dispute the general principle that there must be a contractual or statutory basis for the award of fees. In

addition, omitted from consideration here are those cases where the act of abandonment is clear, such as by dismissal after deciding not to use the property. *See Atherton v. State Conservation Commission*, 203 N.W.2d 620 (Iowa 1973). Also excluded from consideration are cases from jurisdictions where the statute defines abandonment. *See City of Silverton v. Porter*, 28 Or.App. 415, 559 P.2d 1297 n. 3 (1977).

N.E.2d 1139, 1142–43 (Ind.Ct.App.1997), the City's refiling of the eminent domain proceeding constituted "abandonment" of original proceeding, and therefore, landowners were entitled to attorney fees under the Indiana Relocation Assistance Act. In the second proceeding, City of Hammond requested title to less than 3/10ths of one percent of land requested in the original proceeding and dropped one landowner as party, so the legal services performed for landowners in the second proceeding were substantially different from those performed in the original proceeding and the second proceeding sought a new and different course through the landowners' property.[6]

¶ 12 However, on the other hand, abandonment was found not to have occurred in *Pacific Telephone and Telegraph Co. v. Monolith Portland Cement Co.,* 234 Cal.App.2d 352, 44 Cal.Rptr. 410 (1965). There, the condemnor amended its petition to *take a lesser amount of property and for a diminished use.* The court ruled that abandonment was a fact issue and that the condemnor was entitled to a presumption against abandonment. The court determined that the amended petition did not evidence an intent to relinquish or abandon the eminent domain proceeding.

■ ¶ 13 In Oklahoma, a condemnor may dismiss without being required to pay the Commissioners' award *if* the landowner's possessory rights are not disturbed. *Eberle v. State,* 1963 OK 224, 385 P.2d 868; *Board of Commissioners of Pontotoc County v. Rayburn,* 1943 OK 233, 138 P.2d 820. In *Oklahoma Turnpike Authority v. Dye,* 1953 OK 109, 256 P.2d 438, the condemnor, OTA, did not pay the Commissioners' award into court but tried to dismiss and the trial court refused to permit it without payment of the compensation. OTA argued on appeal that it would not use the land and had abandoned the proceedings, and that it had the right to do so. The Supreme Court agreed, holding that OTA did not have to pay the compensation for the reason that the landowner's pos-

sessory rights had not been disturbed. *Oklahoma Turnpike Authority,* syl. 2. The issue of attorney fees was not presented, but the Court's rationale clearly established that a dismissal was an abandonment under the facts, albeit without financial consequences, as the OTA had no apparent intent to pursue the taking. *Oklahoma Turnpike Authority* and other similar cases require that the condemnee's possession be materially disturbed, as was here done by ODOT, before compensation is considered due from the condemnor.

¶ 14 In *State ex rel. Dept. of Highways v. Waters,* 1962 OK 220, 376 P.2d 288, a *filing* of a motion to dismiss did not amount to abandonment because the condemnor took possession of the land for the same purpose as the condemnation alleged. *City of Ardmore v. Donham,* 1958 OK 171, 328 P.2d 438, extended the ruling of *Waters* to the situation where the property described in the petition and the subject of the Commissioners' report, was an entirely different tract than the land actually taken. The Court ruled that this does not necessarily mean that there was, in fact, an abandonment, considering that the land taken was still that of the defendant and was in close proximity to the property described in the petition. However, the facts further show that the condemnee's property rights had not been disturbed.

¶ 15 ODOT argues here that it not only did not abandon the proceedings, but also that it could not do so because it took possession of Chelsea's property in the "in fee" proceedings. ODOT relies primarily on language in *Eberle* indicating that taking possession precludes abandonment. *Eberle,* 1963 OK 224 at ¶ 9, 385 P.2d at 870–71. However, the facts in *Eberle* show that the case was dismissed by the condemnor and thus abandoned, so the real concern there was whether the condemnee's property rights were disturbed. The context of the Court's language in *Eberle* demonstrates that abandonment after possession cannot occur without financial consequences such as payment of the compensation for the taking.

---

**6.** In *City of Hammond,* the Court also found an alternative ground for awarding fees under the Indiana rule allowing conditions to be imposed for dismissals of litigation. In addition, although the action involved the state's Relocation and Assistance Act, the statutory language and legal consequences are the same as involved here under Oklahoma's eminent domain law.

¶ 16 Based upon the foregoing authorities, this Court finds and holds that the resolution of the question of whether a condemnor has abandoned the condemnation, and thus incurred liability for fees and costs, must involve the consideration of a balancing test due to competing policy requirements. The financial consequences are present to prevent abuse of the power of eminent domain and to insure that the condemnee is made whole when the eminent domain power is exercised. *See Department of Public Works & Bldgs. v. Lanter*, 15 Ill.2d 33, 153 N.E.2d 552, 555 (1958); *City of Inglewood v. O.T. Johnson Corp.*, 113 Cal.App.2d 587, 248 P.2d 536 (1952). On the other hand, the requirement to permit flexibility on the part of the condemnor seeking to use property for a public purpose, coupled with the general liberal policy concerning amendments and dismissals in litigation matters, militate against a finding of abandonment with liability in every case. Among the significant factors examined by the courts are: (1) whether the case was dismissed voluntarily; (2) the passage of time or how long the case has been pending; (3) changes in the quantum or description of the property taken; and, (4) the motive and reasonableness of the condemnor's action in amending the petition.

¶ 17 In the case under review, the relevant facts of record are:

(1) The case was not dismissed, but continues, and the project and the need for the use of the property remained unchanged;

(2) The Chelsea property was in fact taken by ODOT prior to its amendment, that is, Chelsea's possessory rights were disturbed;

(3) The case was pending for a lengthy period of time before the amendment was filed; and

(4) The amendment does not materially change the quantum of property taken but does change the nature of the taking from an "in fee" to an easement.

¶ 18 What is missing here is the motive or intent of ODOT in making the amendment. The case had been on file for a long time and it appears that the road was built utilizing Chelsea's property. Indications in the record are that all parties believed that the original Commissioners' report suffered because of faulty instructions of some sort. Moreover, a reduction of the taking to an easement would intuitively indicate a lesser cost to ODOT than a fee taking, but the unstated possibility is that ODOT is here merely disguising a fee taking as an easement taking.

¶ 19 Therefore, this Court holds that a necessary determination, under the circumstances shown by the record, involves ODOT's motive. This Court may not make that determination as a matter of first impression. If there is a reasonable, rational purpose for reducing the taking to an easement that is consistent with the actual use being made of the land taken, then, under the facts here and the foregoing authorities, ODOT has not abandoned the proceedings. On the other hand, if ODOT has merely disguised a fee taking as an easement, such would, under the facts here, be an abuse of the power of eminent domain and ODOT would be held to have abandoned its original proceedings, thereby incurring the liability imposed.

¶ 20 When necessary dispositions are absent, the case must be remanded with instructions that they be determined by the trial court. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Association*, 1997 OK 37, ¶ 25, 936 P.2d 916, 928. Therefore, the decision of the trial court awarding fees and costs is reversed and remanded for further proceedings in accord with the views expressed with the clear understanding that this decision in no way determines either the correctness or reasonableness of fees awarded.

¶ 21 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

COLBERT, C.J., concurs, and REIF, P.J., dissents.

REIF, P.J., dissenting.

¶ 1 I would hold that there was no abandonment and remand for trial on the issue of damages/compensation. Whether the taking

was in fee or an easement simply goes to the issue of compensation.